IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROLYN SIMLEY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO.  3-11-CV-1126-G |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Carolyn Simley (Plaintiff) seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  Based on the relevant filings and applicable law, her motion for summary judgment should be granted,  the hearing decision should be reversed, and the case should be remanded.

I.

Plaintiff alleges that she is disabled due to a variety of ailments, including congestive heart failure, osteoarthritis, atrial fibrillation, pinched nerves in both hands, a clogged artery, high blood pressure, fibromyalgia, heel spurs, sleep apnea, scoliosis, and poor memory.  After her application for disability benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge.  That hearing was held on March 2, 2010.  At the time of the hearing, Plaintiff was 54 years old.  She has a high school education with past work experience as a dietary aide, warehouse worker, and order puller.  Plaintiff has not engaged in substantial gainful activity since November 2, 2000.

The ALJ found that Plaintiff suffered from congestive heart failure, but that the severity of

that impairment did not meet or equal any impairment listed in the social security regulations. The ALJ also concluded that beginning at some point after March 31, 2001, Plaintiff lacked the residual functional capacity to perform her past relevant work, or any work in the national economy, due to congestive heart failure. However, because Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2001, the ALJ determined that she was not entitled to disability benefits. Plaintiff appealed that decision to the Appeals Council, and it affirmed. Plaintiff then filed this action in federal district court.

## II.

In a single ground for relief, Plaintiff contends that the ALJ failed to consult a medical expert in determining the onset date of her disability.

### A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met.

42 U.S.C. § 423(a). The Social Security Act (the Act) defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

> 1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.
>
> 3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.
>
> 4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show

that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff contends that the ALJ failed to consult a medical expert in determining her disability onset date. "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at *1 (S.S.A. 1983). Factors relevant to this determination include the claimant's allegation concerning the onset date, work history, and the medical evidence. *Id.* at *2. Among these factors, "[t]he medical evidence serves as the primary element in the onset determination." *Id.*; *see also Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993). With respect to slowly progressive impairments, such as cardiac conditions, the

4

Commissioner has recognized that:

> [I]t is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began[.]

SSR 83-20, 1983 WL 31249, at *2. In determining the onset date of disability, "the date alleged by the [claimant] should be used if it is consistent with all the evidence available." *Id.* at *3. Where precise evidence of the onset date is not available, SSR 83-20 instructs that:

> [I]t may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. *At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.*

*Id.* (emphasis added). The Fifth Circuit has held that SSR 83-20 requires the ALJ to consult a medical advisor to infer an onset date where the claimant suffers from a slowly progressive impairment and ambiguous medical evidence surrounds the onset date. *See Spellman*, 1 F.3d at 362-63. If the medical evidence is insufficient to make such an inference, the ALJ may consult other sources of information, such as lay testimony from family members, friends, or former employers. *See* SSR 83-20, 1983 WL 31249, at *3. Ultimately, "[c]onvincing rationale must be given for the

5

date selected." *Id.*

Here, the medical evidence regarding Plaintiff's onset date is ambiguous. While being treated at Bon Secours Cottage Hospital (BSCH) in early September 2000, Plaintiff was diagnosed with atrial fibrillation, mitral valve disorder, hypertensive heart disease with congestive heart failure, and cardiomegaly. (*See* Tr. at 529-30). On December 1, 2000, professionals at Esters Family Medical Clinic noted that Plaintiff had a number of cardiac problems: cardiomyopathy, atrial fibrillation, mitral valve prolapse, and congestive heart failure. (*See id.* at 199). On June 26, 2001 -- just three months after Plaintiff's date last insured -- Plaintiff presented to BSCH with shortness of breath. (*See id.* at 698). BSCH medical records indicate that Plaintiff was admitted with "[*e*]*xacerbation* of congestive heart failure, possibly secondary to noncompliance with diet[.]" (*Id.* at 698) (emphasis added). As Plaintiff's congestive heart failure is a slowly progressive illness that the ALJ admits is now disabling, and she exhibited signs of it as early as September 2000, and medical records indicated exacerbation three months after her last date insured, Plaintiff could have been disabled by her date last insured of March 31, 2001. The ALJ did not seek assistance from a medical advisor in clarifying the disability onset date, however.

The Commissioner advances several arguments in support of his claim that the medical evidence was not ambiguous. First, he notes that Plaintiff performed substantial gainful activity in 1999 and responded to treatment in August 2000. (*See* Def. MSJ Br. at 6-7 (citing Tr. at 150, 529-30)).[1] This does not prove that Plaintiff's congestive heart failure was not disabling by March 31, 2001. (*See* Tr. at 199). The Commissioner also contends that Plaintiff's allegation that she was

---

[1] The Commissioner also asserts that a treating physician noted Plaintiff had "hypertensive heart disease *without congestive heart failure*" on October 2, 2000. (Def. MSJ Br. at 7 (citing Tr. at 18, 637)). However, the quoted line is not within the material referenced. In any event, Plaintiff did receive the diagnosis of congestive heart failure by December 1, 2000. (Tr. at 199).

6

diagnosed with various cardiac conditions on December 1, 2000 is inaccurate, and that the record reflects a mere "recitation of her past medical history." (Def. MSJ Br. at 8 (citing Tr. at 199)). In addition to documenting Plaintiff's self-description, the December 1, 2000 medical report contains an "Assessment" portion indicating that Plaintiff was "assessed" with cardiomyopathy, atrial fibrillation, congestive heart failure, and mitral prolapse. (*See* Tr. at 199). Regardless, Plaintiff had been diagnosed with congestive heart failure three months earlier. (*See id.* at 529-30). While no examining or treating physician opined that Plaintiff was disabled during the relevant period, this fact neither makes the record less ambiguous nor precludes a finding of disability. (*See* Def. MSJ Br. at 9 (citing Tr. at 19)); *see, e.g., Spellman*, 1 F.3d at 363 (finding remand appropriate despite fact that no doctor had found Plaintiff's ability to function restricted by depression before date last insured).

The Commissioner also asserts that Plaintiff's failure to follow prescribed treatment weighs against a disability finding. *See* Def. MSJ Br. at 9 (citing *Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990)). He cites a June 2001 BSCH record in which Hetal Gandhi, M.D., noted that Plaintiff's congestive heart failure was "possibly secondary to noncompliance with diet[.]" (*See* Def. MSJ Br. at 8-9 (citing Tr. at 698)). He also cites a record from September 1, 2000, indicating that Plaintiff had stopped taking two prescription medications, Verapamil and Ecotrin, as of that date. (*See* Def. MSJ Br. at 9 (citing Tr. at 544)). Dr. Gandhi's equivocal statement is not a sufficient basis to support a finding that Plaintiff was not disabled at that time. As for the two prescriptions, the Commissioner notes that Verapamil was prescribed for hypertension and Ecotrin was prescribed for arthritis. (*See* Def. MSJ Br. at 7). There is no evidence that Plaintiff's failure to treat her hypertension and arthritis precludes a finding of disability. The Commissioner further

7

argues that through her date last insured, Plaintiff received "conservative treatment" and did not require surgery or "any other extraordinary medical therapy." (Def. MSJ Br. at 8-9 (citing Tr. at 697-99)). There is no evidence establishing that a disabling condition would have warranted more extreme measures.

In addition to arguing that the evidence is not ambiguous, the Commissioner appears to be asserting that the ALJ discharged his responsibility to consult a medical advisor because two state agency medical consultants reviewed Plaintiff's medical record and found her not disabled. (*See* Def. MSJ Br. at 9-10). State agency medical consultant John Durfor, M.D., filled out a Case Assessment Form on November 14, 2008, and fellow state agency medical consultant Terry Collier, M.D., completed a Case Assessment Form on January 12, 2009. (*See* Tr. at 510, 525). Dr. Durfor found *not* that Plaintiff was not disabled as of the date last insured, but that the medical evidence was *insufficient* to allow a determination of disability prior to the date last insured. (*See* Tr. at 510).[2] Dr. Collier merely affirmed Dr. Durfor's opinion. (*See id.* at 525). Neither of these opinions complies with SSR 83-20, which requires the ALJ to infer an onset date with the help of a medical advisor even in the absence of precise medical evidence. *See* SSR, 83-20, 1983 WL 31249, at *2; *see also Larkin v. Comm'r of Soc. Sec.*, Civil Action No. 2-10-CV-291, 2011 WL 4499296, at *7 (D.Vt. Sept. 27, 2011) (remanding case on grounds that ALJ failed to consult medical advisor pursuant to SSR 83-20 despite the fact that two state agency physicians found the evidence insufficient to determine disability prior to date last insured and noting that neither physician actually opined that Plaintiff was *not* disabled during the relevant period).

SSR 83-20 makes clear that the date of onset alleged by the claimant "should be used if it

---

[2] Dr. Durfor's assessment further underscores that the record is ambiguous regarding the onset date.

8

is consistent with all the evidence available." SSR 83-20, 1983 WL 31249, at *3. Where, as here, the medical evidence is insufficient to establish a precise onset date and onset must be inferred, the ALJ is required to employ a medical advisor to assist in making that determination. *Id.*; *see also Spellman*, 1 F.3d at 362 ("[I]n cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor."). Because there is no indication that the ALJ consulted a medical advisor to determine the onset date of Plaintiff's disability, the hearing decision must be reversed. *See Loveless v. Astrue*, No. 7-08-CV-169-KAO, 2009 WL 1808705, at *4 (N.D. Tex. Jun. 23, 2009) (failure of ALJ to engage a medical advisor resulted in uninformed judgment as to the onset date of disability and constituted legal error requiring remand); *Martinez*, 262 F.Supp.2d at 47 (same).

## RECOMMENDATION

Plaintiff's motion for summary judgment should be granted, the hearing decision should be reversed, and this case should be remanded to the Commissioner of Social Security for further proceedings.

**SIGNED ON THIS** 19th day of November, 2012.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

9

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE